# Wytheville.

## New York, Philadelphia and Norfolk Railroad Company v. Wilson's Administrator.

### June 10, 1909.

### Rehearing refused June 24, 1909.

1. WITNESS—*Opinions—Matters of Observation—Experts—Minor Matters.*—A witness who was present and acquainted with the existing conditions may give his opinion as to how far, under those conditions, a signal given by a red lantern could have been observed on the occasion in question. This is not expert evidence, but a matter of common experience, the value of which is to be determined by the jury who have the witness before them and can judge of the value of his opinion. Such evidence should be received, but if rejected, is probably not of itself of sufficient importance to justify a reversal solely on that account.

2. RAILROADS—*Signals—Experts—Opinions.*—A witness who has been in the railroad business for a number of years as brakeman and engineer may give his opinion as to the use of danger signals on railroads. the use made of them, the noises made by some, the light shed by others, and the like.

3. APPEAL AND ERROR—*Objections to Evidence—Waiver.*—Objections to evidence will not be considered in this court, when the same facts were proved by another witness, without objection.

4. RAILROADS—*Duty to Employees—Apprehended Dangers—Signals—Failure to Observe.*—It is the duty of a railroad company to use reasonable care to give to employees operating its trains proper warnings of the dangers which threaten them. If that is done it has discharged its duty, and if, from any cause, the signal is not observed. it is no fault of the railroad company, and it is not liable for resulting injuries.

5. INSTRUCTIONS—*Two Theories of Case—Evidence to Support Each.*—When two theories of a case are presented by the evidence, upon

one of which the jury has been sufficiently instructed, it is error to refuse an instruction based upon the other theory of the case, which, if sustained, would require a different verdict.

Error to a judgment of the Circuit Court of Northampton county in an action of trespass on the case.   Judgment for the plaintiff.   Defendant assigns error.

*Reversed.*

The opinion states the case.

After the evidence had been introduced, the plaintiff asked for the following instructions, which were given over defendant's objection:

"(1). The court instructs the jury, that if they believe from the evidence that Nelson, the flagman of train No. 1, went back a sufficient distance to have warned Parker, the engineer on train No. 49, by the use of torpedoes or fusees, in time for Parker to have stopped his engine and prevented the collision, and that the said Nelson could, in the exercise of ordinary care, have carried with him and used said torpedoes or fusees, but that he either did not carry them with him, or if he did, did not use them, and if he had done so, Parker would have stopped his engine in time to prevent the collision, and that his not doing so was a lack of ordinary care on his part, and was the proximate cause of the collision, then they will find for the plaintiff.   The court further instructs you that the plaintiff in this case is entitled to recover, although they may believe that Parker was guilty of negligence contributing to the accident, if Wilson was not so guilty, and the brakeman was guilty as aforesaid.

"(2). The words 'ordinary care' as used in these instructions means such care as a man of ordinary prudence would have used under similar circumstances in view of the dangers incident to the service, but what could have been ordinary care under some circumstances might be negligence under other circumstances, and it is for the jury to decide from all the evidence whether ordinary care was used in this case.

"(3). If the jury believe from the evidence that the plaintiff is entitled to recover, in estimating the damages the jury should find the sum with reference:

First. To the pecuniary loss of his mother and sisters, at a sum equal to the probable earnings of the deceased, considering his age, business capacity, experience, habits, energy and perseverance during his lifetime.

Second. They may consider the loss of his care, attention and society to his mother and sisters.

Third. They may add such sums as they may deem fair and just by way of solace and comfort to his mother and sisters, for the sorrow, sufferings and mental anguish occasioned by his death. The plaintiff in his declaration claims $10,000 in damages, and the jury are authorized to award such sum as the evidence justifies, if any, not exceeding the sum so claimed by the plaintiff."

And, thereupon, the defendant, by counsel, asked the court to instruct the jury as follows:

"(A). The court instructs the jury, that in an action against a railroad company to recover damages for an injury negligently inflicted on a servant of the company, the burden of proof is on the plaintiff to establish the negligence of the defendant by affirmative evidence, which must show more than a mere probability of a negligent act. The evidence of negligence must not be left wholly to conjecture, and in determining whether or not an act or omission of the master was negligent, it must be borne in mind that the master (railroad company) is not compelled to foresee and provide against that which reasonable and prudent men would not expect to happen.

"(B). If the jury believe from the evidence that Daniel J. Parker, the engineer on train No. 49, was notified at Hallwood station, a station of the New York, Philadelphia and Norfolk Railroad Company, about twenty-five miles north of the place of the collision, between trains No. 49 and No. 1, at or about the hour of —— o'clock A. M., on the 10th day of April, 1906, the

day of the collision between said trains, both being south bound on the same track, a single track, by William D. Nelson, a flagman on train No. 1, to look out for his train No. 1, that it was running ahead of train 49, with a driving hot box, and that fireman George R. Wilson, of train 49, the plaintiff's intestate, was present and within the hearing of William D. Nelson when said Nelson gave this notice to the said Daniel J. Parker (the said engineer), and that train 1 left Hallwood station only about five minutes ahead of train 49, and that the weather was very thick and foggy, and that train 49 ran behind train 1, at a speed of about thirty to forty miles an hour, and if the jury further believe from the evidence that the plaintiff's intestate (George R. Wilson), fireman as aforesaid on train 49, did not keep a faithful and proper lookout with D. J. Parker, the engineer of train 49, for danger signals and obstructions on the said railroad track, in so far as he could in the discharge of his duty as fireman, then the said George R. Wilson, the plaintiff's intestate, was guilty of having participated in the negligence of said D. J. Parker, the engineer, should they believe Parker was in fact negligent, and the plaintiff is not entitled to recover in this action.

"(C). If the jury believe from the evidence that the plaintiff's intestate did not use ordinary care by keeping a faithful and proper lookout for danger signals on the right of way and track, then he contributed to his death, and is precluded from recovering in this action, although the defendant (company) may be chargeable with negligence also.

"(D). If the jury believe from the evidence that the death of the plaintiff's intestate (George R. Wilson) was caused by circumstances which show it was an accident pure and simple, which could not have been anticipated by any reasonable foresight on the part of the company, they must find for the defendant company.

"(E). The court instructs the jury that it is the duty of the railroad company to exercise reasonable care for the safety of its

employees, but it is not bound to provide the latest inventions or the most newly discovered appliances. It is not bound to use more than ordinary care, no matter how hazardous the business may be in which the employee is engaged.

"(F). The court instructs the jury, that if they believe from the evidence that brakeman Nelson stopped train 49 at Hallwood the morning of the collision with his red lantern alone, without difficulty, during a fog, that when freight train No. 1 parted just before reaching Exmore the fog was no denser than it was at Hallwood when he flagged No. 49 with his lantern alone, he was not guilty of negligence in going immediately back and attempting to again flag No. 49 with his red lantern, provided the same was swung and used as a danger signal should have been swung or used.

"(G). The court instructs the jury, that flagman Nelson was in the exercise of reasonable and ordinary care in attempting to signal train 49 to stop with a red lantern alone immediately preceding the collision, if he had stopped the same train at Hallwood a short time before with the same lantern, provided the weather conditions, such as fog and light, were practically the same at both places at the time the red lantern was used to stop the train, provided the same was swung and used as a danger signal should have been swung or used."

To the granting of which instructions, the plaintiff, by counsel, objected, and thereupon the court granted instructions A, B, D and E, as prayed for, but refused to grant instructions C. F and G, as prayed for, but gave instruction C modified as follows:

"(C, as given). If the jury believe from the evidence that the plaintiff's intestate did not use ordinary care by keeping a faithful and proper lookout for danger signals on the right of way and track, in so far as he could in the proper discharge of his duties as fireman, then he contributed to his death, and is precluded from recovering in this action, although the defendant (company) may be chargeable with negligence also, provided

they believe from the evidence such a lookout would have prevented the accident."

And refused to grant instructions F and G, to which action of the court in granting the instructions prayed for by the plaintiff, and in refusing to grant instruction C, as prayed for, and in giving the same as modified, and in refusing to give instructions F and G, as prayed for, defendant excepted.

*Thos. H. Wilcox* and *E. J. Spady,* for the plaintiff in error.

*G. S. Kendall, J. E. Heath* and *R. G. Houston,* for the defendant in error.

Keith, P., delivered the opinion of the court.

Passenger train No. 49 of the New York, Philadelphia and Norfolk Railroad Company ran into the rear of a freight train on that road, the collision resulting in the death of Wilson, the fireman upon the engine of the passenger train, and this suit was brought by his administrator to recover damages. There was a verdict and judgment for the plaintiff. During the progress of the trial certain exceptions were taken to rulings of the court, which are now before us for review upon a writ of error.

The evidence tends to prove that, on the 10th of April, 1906, a freight train consisting of an engine and twenty cars was moving south upon the roadway of plaintiff in error. Near Hallwood station the engineer discovered that his engine had a hot box, and his flagman was at once dispatched to notify passenger train No. 49 of the fact. The flagman had instructions to flag the train, to stop it and to inform the engineer upon that train of what had occurred upon the freight train. The flagman went back a sufficient distance, and using a red lantern as a signal flagged passenger train No. 49, brought it to a stop and delivered his message. The proof is that at the time there

was quite a heavy fog, but, notwithstanding that fact, the signal with the red lantern was observed and obeyed by the engineman upon passenger train No. 49. Both trains on this single track were moving southward in the direction of Cape Charles, the terminus of the road, and it appears from the evidence that the train dispatcher at Cape Charles notified the engineman on passenger train No. 49 of the trouble with respect to the hot box upon the freight train, and the telegram giving this information was found upon the person of Parker, the engineman, after his death, he also having been killed by the collision which subsequently occurred.

After leaving Hallwood, and as it approached Exmore, a station 29 miles distant, a coupling on the freight train gave way and the train parted. It was speedily halted, and the flagman, who was in the caboose, was at once sent to the rear to give warning of the situation. His testimony is that when he left his train and got upon the ground he could hear No. 49 approaching. He ran as rapidly as he could back along the railroad for a distance of eight telegraph poles, or 480 yards, waving his red lantern across the track, and continued to wave it until the passenger train had approached so nearly that he was compelled to stand aside to escape being run over. The engineer did not acknowledge his signal or diminish the speed of the train, but rushed by, with the result that his engine collided with the rear of the freight train, and both the engineman and his fireman were killed.

There is evidence tending to prove that both trains had been inspected that morning; that their couplings and appliances were such as complied with the rules of the Interstate Commerce Commission and with the rules in the United States for standard couplings; and that, so far as was disclosed by recent and careful inspection, all of these appliances were in good order.

The rules of the company prescribe that flags of the proper color must be used by day, and lamps of the proper color by

night, or whenever from fog or other cause the day signals cannot be clearly seen; that red signifies danger, and is a signal to stop; that an explosive cap or torpedo placed on the top of the rail is a signal to be used in addition to the regular signals; that the explosion of one torpedo is a signal to stop, the explosion of two torpedoes not more than two hundred feet apart is a signal to reduce speed and look out for a danger signal; that a fusee is an extra danger signal, to be lighted and placed on the track at night, in cases of accident or emergency; that a train finding a fusee burning upon the track must stop, and not proceed until it has burned out; that a lamp swung across the track is the signal to stop; and rule 78 provides, that "all signals must be used strictly in accordance with the rules, and trainmen must keep a constant lookout for signals." Rule 99 provides, that "when a train stops or is delayed, under circumstances in which it may be overtaken by a following train, the flagman must go back immediately with danger signals a sufficient distance to insure full protection. When recalled, he may return to his train, first placing two torpedoes on the rail when the conditions require it."

When the flagman went back on this occasion, he had with him a red lantern, as already stated, and torpedoes, but no fusees. The evidence is that the passenger train was running at between thirty and forty miles an hour. At thirty-five miles an hour, the train would have covered the 480 yards between the point at which the flagman made his signal and the rear of the freight train in 28 seconds.

The first assignments of error are to the rulings of the court in admitting certain testimony over the objection of plaintiff in error, as set forth in bills of exceptions Nos. 1 and 2.

A witness, C. H. Ames, was introduced on behalf of the defendant, and testified as follows:

. "Q. Did you get off the train when the accident occurred? A. Yes, sir.

"Q. Was it foggy there? A. Yes, sir.

"Q. Was it just as foggy as it was at Keller? A. It was later and lighter.

"Q. The same conditions prevailed there as at Keller? A. The day was lighter.

"Q. Was the fog as heavy? A. Yes, sir.

"Q. Was it possible with the conditions that prevailed at the place where the accident occurred to see any kind of light very far?"

To which question defendant, by counsel, objected; but the court overruled the objection and allowed the witness to answer the question.

"A. Do you want me to specify some distance?

"Q. We want you to specify how far you could see a light."

He was then asked: "Will you please state at what distance you think it possible to have seen the lanterns used ordinarily by the railroad company, if you know what they are, as signal lights?"

"A. I should not think you could see it very far—the length of the car."

To which ruling of the court in allowing the questions to be asked and answered in the connection in which they were asked, the plaintiff in error excepted.

The bill of exception assigns no reason why the answer should have been excluded. Its object was to get from the witness an opinion as to how far, under the conditions which existed, the signal given by a red lantern could have been observed on the occasion in question. This is not a matter of expert knowledge. It is a matter of opinion, it is true, resting on common experience, the value of which must be determined by the jury, which has the witness before it and can form some idea of the weight to be attached to his evidence. In this case, the witness was upon the train on the morning of the accident. He saw the fog and the lanterns, and was able to give some idea of the distance at which the light of the red lantern in use by railroads on such occasions could be seen.

NEW YORK, &c. R. Co. v. WILSON. 109 Va. 754. 763

We think, therefore, that the questions and answers were proper; but even if they were not, we should be indisposed to attach to them such importance as to make them the ground of reversing the judgment.

The second bill of exceptions is to the testimony of James Driscoll. The questions which he was asked were as follows:

"Q. From your knowledge and experience as a railroad man, do you feel qualified to speak as to the running of trains and the use of signals? A. Yes, I think so.

"Q. I would ask you what are the danger signals ordinarily used by railroad companies? A. Red flag by day and red lamps by night, and also they use torpedo and fusee. The torpedo can be used in the day time and also at night, and the fusee especially goes at night.

"Q. What is a torpedo? A. It is something about the size of a silver dollar, and has two straps to it about two inches long of soft metal. I don't know what the metal is made of. In case of danger, this is a special danger signal used. This torpedo is placed on the rail. One means to stop still, and for the engine not to go any further. It explodes in a terrible way, and that means to stop there. Two placed one rail length apart is a signal to proceed on, and to look out, danger ahead.

"Q. How long does it take to fix or apply a torpedo to the rail? A. You can almost place it as quick as the hand can be used. The metal is very soft, and the rail has the over projection, and you slip it on as quick as that.

"Q. What is a fusee? A. It is a piece about that long, and it has an explosive to the end of it, and it has a piece of steel about that long. They are kept where you can put your hand on it, and you can strike it so, and you can throw it so (indicating), and it burns ten or fifteen minutes. It burns a large red light. The smoke goes up, and is a danger signal, and that means stop and not move until that burns out. That is another extra danger signal used by railroad men.

"Q. Did I understand you to state how high a fusee burns?

A. It burns tremendous high, and the smoke casts a large red light. I could not tell just how many feet it would show in the elements from the ground up, but it is a tremendous big light."

To this examination plaintiff in error excepted, and assigns the ruling of the court upon it as error.

It appears that Driscoll had been in the railroad business for a number of years, as brakeman and engineer, and was therefore qualified to speak and to give his opinion upon the subjects with reference to which he testified. But even if this were not so, the same facts were proved, without objection, by another witness, and we are of opinion that this assignment of error is not well taken.

When the evidence was concluded, the defendant in error asked for certain instructions, all of which were given; and while they were excepted to in the trial court, there is no assignment of error with respect to them.

Plaintiff in error also asked for certain instructions, marked "A," "B," "C," "D," "E," "F" and "G." The court gave "A," "B," "D" and "E"; refused to give instruction "C" as asked for, but gave it with an amendment; and wholly rejected instructions "F" and "G."

Instruction "C," as asked for, told the jury, that if they believed "from the evidence that the plaintiff's intestate did not use ordinary care, by keeping a faithful and proper lookout for danger signals on the right of way and track, then he contributed to his death, and is precluded from recovering in this action, although the defendant company may be chargeable with negligence also." The court added to it these words: "provided they believe from the evidence such a lookout would have prevented the accident."

The fact that his intestate was injured does not entitle defendant in error to recover. He must show that the injury was the result of negligence upon the part of the railroad company. The duty of the railroad company was to use reasonable

care to give proper warnings of the danger which threatened the train upon which plaintiff's intestate was an employee. If that was done, then it had discharged its duty, and if for any cause the signal was not observed, that was no fault of the railroad company. If the failure to observe the signal was due to inattention upon the part of plaintiff's intestate—to his failure to keep "a faithful and proper lookout," as it was his duty to do—of course, there could be no recovery. But suppose the railroad company discharged its duty, could it be made answerable to the plaintiff, although his intestate, without any dereliction of duty upon his part, failed to see, or was unable to see, a proper and sufficient signal of danger?

We think that instruction "C," as asked, correctly stated the law; that the proposition contained in the qualification attached to it had already been sufficiently covered by other instructions, and that attaching it to instruction "C" tended to mislead the jury, and was erroneous.

This brings us to consider instructions "F" and "G." It appears from the evidence and from the instructions asked and given at the instance of defendant in error, that the conflicting theories of plaintiff and defendant in the court below were as follows: The theory of plaintiff, defendant in error here, was that, under the circumstances as they existed immediately before and at the time of the collision, when the flagman went back up the track to stop passenger train No. 49 it was his duty to take with him not only the red lantern but torpedoes and fusees; to go back as far as he safely could under the circumstances, and attach a torpedo and a fusee to the track in the proper manner. This theory of the case is presented in instruction No. 1. The theory of the defendant, plaintiff in error here is that the danger signal provided by the rules and in customary use on such occasions is the red lantern at night; that the proper use of the torpedo and fusee is to put them upon the track as a warning to a following train when the flagman has been recalled by a signal from his own

train; and this is the theory presented by Instructions "F" and "G."

It will be recalled that the testimony of the flagman tends to prove that he went as rapidly as possible to the rear, and as far as he could go with safety; that he waved his red lantern as a signal, as he had done a very short time before at Hall-wood station; that the conditions at Hallwood and at Exmore were substantially the same; that he 'met the on-coming passenger train at a distance of 480 yards from the rear of the freight train; that it was running at a rate of 35 miles an hour; and that he had no time to put down a torpedo or a fusee. And when it is recalled that a train going at that rate of speed would cover the distance of 480 yards in 28 seconds, and that if he had stopped a sufficient length of time before meeting the passenger train to have attached the torpedo or fusee to the track, it would have resulted in his giving a signal at a distance short of 480 yards from the rear of the freight train by so much space as would have been covered by the passenger train while he was placing the torpedo or fusee; we cannot say that the flagman, confronted with these difficulties, judged unwisely in confining himself to giving the signal with the red lantern. As a matter of fact, he did not have the fusee with him, but that we presume does not affect the situation; for if that was, under the circumstances, the only proper signal to have been given, then he was not in the exercise of reasonable and proper care in not supplying himself with them.

As the court told the jury in instruction "E," it was the duty of plaintiff in error to exercise reasonable care for the safety of its employees; but it was not bound to use more than ordinary care no matter how hazardous the business in which the employee was engaged. There being evidence, then, tending to show that, under all the circumstances, a signal with a red lantern would have satisfied the obligation of plaintiff in error, the instructions in question should have been given.

In *Richmond Traction Company* v. *Martin's Admr.*, 102

Va. 209, 45 S. E. 886, Judge Whittle says, that "where two theories of a case are presented by the evidence, upon one of which the jury has been sufficiently instructed, it is error to refuse an instruction based upon the other theory of the case, which if sustained would require a different verdict, or to add to such an instruction a qualification which would withdraw from the jury the consideration of the last mentioned theory."

And in *Richmond Passenger, &c. Co.* v. *Gordon,* 102 Va. 498, 46 S. E. 772, Judge Buchanan says: "Where there is evidence tending to prove that the injury sued for was caused by the concurrent and co-operative negligence of both plaintiff and defendant, and also evidence tending to prove that the defendant's negligence alone was the proximate cause of the injury, each party has the right to have his view or theory of the case presented to the jury by proper instructions for that purpose." See also Phillips on Instructions to Juries, sec. 101, and cases there cited.

We are of opinion that the judgment of the circuit court must be reversed, and a new trial awarded.

*Reversed.*