𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## DAVIDSON V. WASHINGTON AND OLD DOMINION RAILWAY.

### January 20, 1921.

1. CARRIERS OF PASSENGERS.—*Person Assisting Passengers to Alight —Presumption as to Whether Such Person an Employee of Company.*—A passenger was injured while alighting from the baggage end of a combination passenger and baggage or mail car. The front end of the car was the baggage or mail compartment and there were no steps from the front ·platform to the ground. She was assisted .to alight by a man wearing a cap and uniform, but the passenger was unable to state whether the cap and uniform which this man wore was that of an employee of another transportation company, whose cars were only a few steps away, or the uniform of the defendant company, or the uniform of the United States Army. The employees of the carrier testified that they had warned the passengers to keep out of the baggage compartment.

   *Held:* That it could not be presumed merely from the presence of the man in the cap and uniform that he was an employee of the defendant company, much less that he was acting for it, and while plaintiff got no specific warning from the employees of the company, their testimony was not contradicted, and was sufficient to show that the defendant did not authorize one of its employees to invite and assist passengers to use that end of the car in alighting.

2. CARRIERS.—*Carriers of Passengers—Using Wrong End of Car for Alighting.*—A passenger was injured while alighting from the front end of a combination passenger and baggage or mail car. The front end of the car was the baggage or mail compartment and there were no steps from the front platform to the ground. The passenger had entered from the rear of the car. Over the door of the baggage or mail compartment was a sign "No admittance." Accepting the passenger's statement that she did not see this sign, its existence was one of several circumstances which justified the company in assuming that passengers would not undertake to use that door as a means of exit. There were other circumstances to admonish the passenger that she was not expected to go out that way.

*Held:* That the defendant company had the right to assume that passengers would exercise their senses, and would use the means that were plainly provided for their use, and not undertake to use those which were plainly not so intended, and that no negligence was shown on the part of the defendant company.

3. CARRIERS.—*Carriers of Passengers—Using Wrong End of Car for Alighting—Warning Passengers.*—A carrier is not negligent in not giving a passenger notice that she was expected to alight from the rear end of the car, when the construction of the car was in itself such a notice to any reasonably thoughtful person.

4. CARRIERS.—*Carriers of Passengers—Passengers Alighting from Wrong End of Car.*—Where there was nothing to show that the doors of the baggage compartment of a combination baggage and passenger car were opened by any employee, or pursuant to any authority of the carrier, and the employees of the carrier attempted to deter passengers from making their exit through the baggage compartment, and it appeared at a glance from either door of the baggage compartment that passengers were not expected to go out that way, defendant carrier was not negligent in permitting the doors of the baggage compartment to be left open.

5. CARRIERS OF PASSENGERS.—*Alighting—Wrong End of Car.*—Plaintiff was injured while alighting from the baggage platform of a combination passenger and baggage or mail car. There were no steps at this end of the car. The conductor testified that he warned passengers on that occasion to keep out of the baggage car, and that it was his practice to keep them out; and the motorman testified that when the car stopped he endeavored to turn a passenger back from going out that way, and closed the door between the compartments.

*Held:* That although a number of passengers as well as the plaintiff, passed out of the front end of the car through the baggage compartment, the evidence was not sufficient to establish a practice or custom by the defendant company of permitting passengers to alight from the front end of the car.

6. CARRIERS.—*Carriers of Passengers—Care Required.*—Passengers are entitled to expect and demand from carriers the highest degree of care for their protection and safety, but this rule does not go to the extent of requiring carriers to exercise a guardianship over passengers who are adults and mentally competent, or to undertake to coerce them into the exercise of ordinary care for their own safety.

7. CARRIERS.—*Carriers of Passengers—Alighting—Steps.*—A carrier is not negligent in failing to provide steps from the door of the baggage compartment of a combination passenger and baggage car to the ground, as the carrier is under no obligation to provide steps for passengers at a place plainly not intended for their use.

8. CARRIERS.—*Carriers of Passengers—Alighting.*—Where a passenger was injured in alighting from the baggage platform of a combination baggage and passenger car, the fact that the motorman's stool was used at the door by passengers in alighting does not establish the negligence of the carrier, where there was nothing in the evidence to show that any employee of the company, or anybody with the company's authority made such use of the stool.

9. CARRIERS.—*Carriers of Passengers—Alighting.*—Where a passenger was injured in alighting from the baggage platform of a combination baggage and passenger car, the fact that a man in a cap and uniform was assisting passengers to alight does not establish the negligence of the carrier, where there was nothing else in the evidence upon which to base an inference that he was acting for the company.

10. CARRIERS. — *Carriers of Passengers — Alighting — Burden of Proof.*—In an action by a passenger for injuries sustained while alighting from a car, the burden is on the plaintiff to prove the negligence complained of, and where the passenger claimed that defendant was negligent in permitting to be standing at the door of the baggage compartment of a combination baggage and passenger car a man in a cap and uniform who was assisting passengers to alight, the burden was on the passenger to show that this man was an employee of the company or acting under its authority.

11. CARRIERS.—*Carriers of Passengers — Alighting — Warning.*—A carrier is not negligent in failing to warn a passenger of an unusually long step which she would have to take in alighting from the top of a stool to the ground, where it was not shown that the carrier was responsible for the use of the stool by passengers in alighting from a platform not intended for the use of passengers.

Error to a judgment of the Circuit Court of Alexandria County in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*W. C. Gloth* and *Keith, McCandlish, Hall & Garnett,* for the plaintiff in error.

*C. Vernon Ford, C. E. Nicol* and *Wilton J. Lambert,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This is an action to recover damages for personal injuries sustained by the plaintiff, Miss Harriet W. Davidson, while in the act of alighting from one of the electric cars of the defendant, Washington and Old Dominion Railway. There was a demurrer to the evidence, upon which the trial court rendered a judgment for the defendant, and thereupon the plaintiff brought the cause here upon a writ of error.

Without any analysis of the declaration, it is sufficient to say that the theory relied upon by the plaintiff and combated by the defendant at the trial and on this appeal was, as stated in the petition for the writ of error, "that the company failed to provide any steps at the door through which she fell, and permitted conditions to exist which led her to believe that the company intended and desired her to alight at that point."

The accident occurred shortly after dark at the terminus of the car line in the city of Washington. The plaintiff was an unmarried woman, fifty-two years of age, in normal health, experienced in business affairs, and a daily traveler on street cars. She had boarded the car involved in this case at Herndon, a station in Fairfax county, where she had been for a short visit. The train consisted of two cars. She took the head or front car because the one in the rear was to be detached before reaching her destination in the city. She entered from the rear, and could not have entered from the front because it was a combi-

nation passenger and baggage or mail car, with the baggage or mail compartment headed towards Washington, and there were no steps on that end. This compartment was cut off from the passenger section by a partition with a door in the center and over the door was posted a notice 9 1/2 x 3 1/2 inches in size, legible from almost any position in the car, to this effect: "U. S. Mail Compartment: No Admittance." The rear steps and platform, provided for the entry and exit of passengers, were in proper condition. In the interior of the passenger compartment there was an aisle leading from the entrance door to the door in the partition, with seats on each side facing forward, except the last seats on either side, those immediately on each side of the door to the baggage or mail compartment, which were reversed and faced to the rear, so that passengers on the last mentioned seats would be riding backward.

When the plaintiff entered the car, all the seats were filled and passengers were standing in the aisle. This condition continued all the way to the final stop. The plaintiff stood for some time, and was then offered and accepted a seat at the extreme front end, and sat there with her back to the partition until the terminus of the line was reached. She did not see the sign over the door, did not know there was another compartment, and supposed the door by her side opened like the rear door on a platform. When the car stopped, she sat still for a moment or two watching the crowd. Passengers were hurrying off in both directions. She testified that as a regular traveler on street cars she had always been taught to enter cars at the rear and leave at the front, and, furthermore, that it would have been impossible for her to push her way toward the rear door of the car through "the crowd that surged to go out of the front door," and that she followed the crowd that way, and was very much surprised to find herself, instead of on the platform, in a small, dark baggage compartment which

she did not know was there, that the door leading from the car was open; that she partly followed and was partly pushed by the crowd through that door; that she partly followed and was partly pushed by the crowd to the side door of the baggage compartment and was about to step down, to quote her literally, "on a step as I thought—I cannot say I thought, I suppose I did not think at all, but I was about to step down when I realized as I got there that there were no steps, and it was a shear break to the ground;" that a man whom she took to be an employe of the defendant, wearing a cap and uniform (but whom she afterwards on cross-examination was unable to identify or connect with the service of the defendant company) was standing there assisting passengers to alight; that as she turned and hesitated he put out his hand to assist her; that she gave him her satchel and umbrella and took his hand; that she saw there was a stool placed at the doorway, to quote her again, "just a round or square edge stool as it seemed to me, and I saw I could not make such a descent as that burdened as I was, so in that instant of time I gave him my traveling bag and asked him to please put it down for me, which he did * * *. Then he took hold of my hand with one of his hands and put the other under my elbow, and I stepped down with my left foot to the little round top of the stool and did so very carefully, not realizing that the stool was as high as it was. I could not see very well. It was rather blurred at the bottom, and of course it all happened in a moment, and the stool being entirely too high for me, I came down with the full weight of my body and the foot snapped under me; * * * I tried to struggle up and the pain was so agonizing that I was unable to support myself at all so he lifted me up and said: 'Lady, can you hold on to the handle of this car?' There was another car I then saw on the next track next to the car barn of the Capitol Traction Company, and he said: 'I have got to help these other people off.' "

[1]   There is nothing to show who this man was. The plaintiff very frankly admitted on her cross-examination that she did not know. She was unable to state whether the cap and uniform which he wore was that of an employe of the Capitol Traction Company, another transportation company whose cars were only a few steps away, and to which the evidence shows practically all passengers from the defendant's car were hurrying for a connection to other parts of the city, or the uniform of the defendant company, or the uniform of the United States Army. It cannot be presumed merely from his presence there that he was an employe of the defendant company, much less that he was acting for it. The motorman testified that when the car stopped a man undertook to go out that door and he told him not to go that way, closed the door, and pushed the stool to one side. The conductor testified that he warned the passengers to keep out of the compartment. While the plaintiff got no such specific warning from the motorman or conductor, this testimony is not contradicted and is sufficient to show that the defendant did not authorize one of its employes to invite and assist passengers to use that end of the car.

[2]   We are of opinion that the plaintiff has failed to show any negligence on the part of the defendant company. Independent of any question of her own negligence in taking the course she did, and accepting her statement that she did not see the sign over the door, the existence of the sign there was one of several circumstances which fully justified the company in assuming that passengers would not undertake to use that door as a means of exit, and furthermore, there was everything in the situation to admonish her and other passengers that they were not expected to go out that way. The defendant company had the right to assume that passengers would exercise their senses and would use the

means that were plainly provided for their use, and not undertake to use those which were plainly not so intended.

The brief of counsel claims that there were eight particulars in which the defendant was negligent. It will involve some repetition, but we shall notice those specifications briefly and in their order.

[3]   (a) As to the claim that the company was negligent in not giving the plaintiff notice that she was expected to alight from the rear: The answer is that the construction of the car was in itself such a notice to any reasonably thoughtful person. She knew the moment she got in the baggage compartment that she was out of the place provided for passengers, and she knew as soon as she got to the side door that there were no steps and "a sheer drop to the ground." She knew that she came in from the rear where provisions for her exit were ample.

[4]   (b) As to the claim that the defendant was negligent in permitting the door leading from the passenger section of the car to be open, thereby, as contended, constituting an invitation for petitioner to pass through that door; and (c) in permitting the door leading from the baggage compartment to the ground to be open, thereby constituting an invitation to her to approach and pass through that door. The answer to both of these contentions is that there is noting whatever to show that either of the doors in the baggage and mail compartment was opened by any employe, or pursuant to any authority of the company; and that the conductor and motorman attempted to deter passengers from taking that route; and further and conclusively, one look from either door at once disclosed conditions which in themselves plainly indicated that passengers were not expected to go that way.

[5, 6]   (d) As to the claim that the defendant was negligent in permitting large numbers of passengers to pass out of the front of the car through these two doors in ad-

vance of plaintiff. The answer is that these passengers, like the plaintiff herself, voluntarily chose to rush out that way, instead of waiting until they could get out in order and safety by the one way provided for that purpose. It does appear that some ten or twelve passengers had crowded into the baggage compartment and were riding there when the car stopped, but the plaintiff was not misled by that fact because she did not know they were there, and thought the door opened to a platform on the outside. Some effort was made to prove that the company had indulged the custom on the part of passengers in riding in this baggage compartment and in going out of the car that way, but the evidence for this purpose was objected to and excluded, and there is no bill of exceptions in the record saving that point. It is contended that the evidence so far as it went was sufficient to enable the court to infer that such a practice and custom had prevailed. To the contrary the only affirmative evidence is that of the conductor who testified that he warned passengers on that occasion to keep out, and that it was his practice to try to keep them out; and the testimony of the motorman who said that when the car stopped, he endeavored to turn one of them back and closed the door. Passengers are entitled to expect and demand from carriers the highest degree of care for their protection and safety, but this rule does not go to the extent of requiring carriers to exercise a guardianship over passengers who are adults and mentally competent, or to undertake to coerce them into the exercise of ordinary care for their own safety.

[7] (e) It is claimed that the company was negligent in failing to provide steps from the door of the baggage compartment to the ground, but clearly there was no obligation to provide steps for passengers at a place plainly not intended for their use.

[8]   (f) It is claimed that the defendant was liable in permitting the motorman's stool to be used at the door by passengers in alighting, but there is nothing in the evidence to show that any employe of the company, or anybody with the company's authority made such use of the stool.   The man in charge of it closed the door in the face of the pas- senger who was attempting to come out that way, told him not to come, pushed the stool around to one side, left it on the car and went off to his other duties.   It is certainly just as reasonable to assume that some of the passengers in their hurry and rush removed the stool, as to assume that some wholly unidentified employe of the company came to that place and invited the passengers to use it.

[9, 10]   (g) As to the claim that the defendant company was negligent in permitting to be stationed at the door of the baggage compartment a man in a cap and uniform who was there assisting passengers to alight.   As we have al- ready seen, the evidence wholly fails to disclose who this man was.   There was nothing in the evidence except the fact that he was there, and that he wore a cap and uniform and was helping passengers to alight, upon which to base an inference that he was acting for the company.   When it is recalled that the conductor had already warned pas- sengers not to go that way, that the motorman had done the same thing, that the passenger exit from the car was properly equipped for the purpose, and that the conductor was himself there at the rear assisting passengers to alight, it must be apparent that neither court nor jury would be justified, without some further proof, in holding that the company had sudenly changed its policy and put some em- ploye at that point to encourage passengers to go out that way.   The burden is on the plaintiff to prove the negligence complained of, and while the man in the cap and uniform may have been an employe of the defendant company, he

may not have been, and it would be wholly unjust for us to hold the defendant company liable under the circumstances detailed upon a mere guess as to who this man was. If we may be permitted to guess at all, it would seem a far more probable conjecture that he was an employe of the Capitol Traction Company, who, standing by and seeing the rush of these passengers through this dangerous exit, naturally offered his aid, as any other stranger would have been likely to do.

[11] (h) As to the claim that the company was negligent in failing to warn or notify petitioner of the unusually long step which she would have to take from the top of the stool to the ground (the evidence showing that this step would be about 3 1/2 feet). It necessarily follows from what has already been said that the company was not shown to be responsible for the use of the stool, and this being true, there was, of course, no duty to warn the plaintiff as to the length of the step she was about to take.

The evidence in this case discloses, without dispute or question, that the defendant furnished a safe and proper platform and steps for entrance to and exit from the car in question; that the car stopped in a well lighted terminal and for a sufficient length of time to permit the safe and orderly discharge of plaintiff and other passengers through the exit provided for that purpose; that the conductor in charge of the car was at the platform and steps aiding and assisting the passengers; that the plaintiff knew of the existence of the platform and steps at the rear, and there was nothing for which the defendant was responsible which could have led her to do the irregular and apparently reckless thing of trying to leave the car by a short cut through the baggage compartment. It follows that there was no negligence on the part of the defendant, and therefore we need not go into the question of the plaintiff's contributory negligence.

The principles of law applicable to the facts in this case are so elementary and well settled that we deem it unnecessary to go very far in the citation of authority. The following will be sufficient:

"It is not negligence to fail to take precautionary measures to prevent an injury, which if taken would have prevented it, when the injury could not reasonably have been anticipated, and would not have happened but for the occurrence of exceptional circumstances. The first requisite of proximate cause is the doing or omitting to do an act which a person of ordinary prudence could foresee might naturally or probably produce the injury, and the second requisite is that it did produce it." *Va. I. C. & C. Co.* v. *Hughes, Adm'r,* 118 Va. 741, 88 S. E. 92.

In the case of *Mitchell* v. *Southern Ry. Co.,* 118 Va. 642, 648, 88 S. E. 56, Judge Keith in delivering the opinion of the court quoted with approval the following extract from the opinion in the case of *Michigan Central R. Co.* v. *Coleman,* 28 Mich. 440: "Where a railroad company has a platform and other facilities for entering and leaving cars with safety on the depot side of their track, the failure to have the opposite side likewise prepared as a place for entering and leaving the cars cannot be regarded as negligence; they may select and adhere to such arrangements of their depots and platforms as they see fit, if those they make are safe and commodious. Passengers cannot be supposed to be ignorant of the necessity and use of platforms, and when a platform is in plain sight which they must know was made for their use, they cannot properly complain that they are not accommodated; they are required to conform to the reasonable business arrangements of the railroad."

In 4 Elliott on Railroads, section 1641, page 2592, it is said that "if a railroad company has exercised ordinary and reasonable care, we think it is not liable for failing to guard against accidents that could not reasonably have been an-

ticipated, and a passenger is certainly not justified in voluntarily incurring an obvious danger merely to avoid a temporary inconvenience."

The demurrer to the evidence was properly sustained, and the judgment complained of is affirmed.

*Affirmed.*