# Wytheville.

## W. T. Meanley v. Petersburg, Hopewell and City Point Railway Company.

### June 15, 1922.

### Absent, West, J.

1. Stations—*Injuries at Stations—Contributory Negligence—Case at Bar.*— A rear window of a railroad station located within about four feet of a track upon which railway cars are frequently passing is clearly an improper place to go for the purpose of taking an infant child through the window, or for any other purpose except in some emergency, and plaintiff in the instant case was clearly guilty of contributory negligence in going to such place for such purpose.

2. Stations—*Invitees—When Invitee Becomes Trespasser—Case at Bar.*— In the instant case, an action for injuries sustained at defendant's station, plaintiff, when he visited the station grounds for the purpose of meeting his brother-in-law, and in moving around with those assembled there in the near-by public road, was an invitee, and should have remained in the place assigned to which the public was invited. But because he went to an unsafe place at the station which was but a step from a safe place where he had a right to be, he did not become a mere trespasser relieving the transportation company from every obligation except the obligation not to injure him wilfully.

3. Stations—*Duty of Railroad to Invitees—Person Going to Forbidden Place—Lookout.*—It is the duty of railroad companies at and about railway stations to which people are invited to come, and where they may be constantly expected, to operate its trains there with reasonable care proportioned to the danger which the circumstances create. This imposes upon the companies not the duty to provide for the absolute safety of persons who were themselves negligent in going to forbidden places and where they should not have gone, but to move their cars with reasonable care, and this involves exercising a reasonable lookout for persons naturally to be expected to be in that vicinity.

4. Stations—*Injury to Person at Station—Last Clear Chance—Instructions—Submission of Issue to Jury.*—In an action for injuries to plaintiff at defendant's railroad station, the theory of defendant was that the peril of the plaintiff was never discovered by the motorman, and that there was no negligence on the part of the motorman in

failing to see plaintiff. If this was true there was no liability upon defendant, and plaintiff's own negligence was the sole cause of the injury, but if plaintiff's version was true, then by the exercise of ordinary care the motorman should have seen that the plaintiff had placed himself in a position of extreme danger, and have sounded the proper alarm signals and have done all in his power to avert the injury.

*Held:* That, notwithstanding the gross negligence of the plaintiff, the evidence thus presented an issue of fact which the plaintiff was entitled to have submitted to the jury, and that the court erred in denying him that right.

5. APPEAL AND ERROR—*Remand—Remand Upon One Point Alone.*— Where every issue in a case except one was decided against the plaintiff by the jury, under instructions which could hardly have been misunderstood, the Supreme Court of Appeals remanded the case for a new trial, without reopening all of the issues, but merely for the purpose of determining the issue which was never submitted to the jury.

6. STATIONS—*Injury to Person at Station—Last Clear Chance—Burden of Proof.*—In an action for injuries to plaintiff at a station, when plaintiff negligently placed himself in a position of peril, the burden of proving that the defendant through its motorman, by the exercise of reasonable care and without the neglect of its other duties, should have perceived the peril of the plaintiff and thereafter, by the exercise of reasonable care, could have averted his injury, is upon the plaintiff.

Error to a judgment of the Circuit Court of Prince George county in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Richard Evelyn Byrd, W. L. Duvaney* and *Fulton & Wicker,* for the plaintiff in error.

*Zimmer & Syme* and *Richard H. Mann,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

The plaintiff, Meanley, was struck by a car of the defendant company at Hopewell, instituted his action therefor, and upon the trial there was a verdict and judgment in favor of the company, of which he is here complaining.

The place and circumstances of the injury (in view of the verdict) may be thus described: The company operated an electric railway between Petersburg and Hopewell, and at the Hopewell station its track made a loop upon which its cars turned for the return to Petersburg. The passenger station at Hopewell was near ·the public road and the approach to the station was from its north side. Before its erection there had been a platform on the same site, and the station was erected over the platform. This left exposed between the rear or south side of the station and the track, a part of the old platform about four feet in width. This space was not intended for or devoted to the accommodation or use of passengers, the way of approach and entrance to the station being on the other, or north, side. At both the eastern and western ends of this space on the south of the station there were signs reading, "Danger! Do not use this space for a walk way," and at one end thereof, there was a cattle guard, apparently placed there as an additional method of cautioning the public against the use of that space. The movement of this car after discharging its passengers was upon the loop and returning to Petersburg by a track on the south side of the station about four or four and a half feet therefrom, but curving in its course in immediate proximity to the planked-over space above referred to. Because of this curve in its track, when the car was moving around the rear of the station, the overhang of the car would bring the rear end of it very close to the station wall and thus make the space at that time obviously a dangerous place at which to stand.

The plaintiff, who lived at Hopewell, had gone to the station with his sister and her infant child to meet his brother-in-law, who was expected on one of the

cars of the company. An unusual number of persons were also there, and others were expected, because there was to be an assemblage of members of the Shrine on that day at Hopewell. The plaintiff left the waiting room of the station by its front or north door for the purpose of meeting his brother-in-law, and having been informed that he was getting off one of the cars, then walked back across the road until he reached and went upon the planked space located on the south side of the building to an open window at the rear of the waiting room for the purpose of getting his sister's little boy and returning to the car. While at that window, possibly having his head inside, talking to and expecting his sister to pass the child out to him through the window, he was struck by the rear door of a car passing along the south side of the building on its way to the space assigned for passengers to board the car on the return trip to Petersburg. It is observed that the front of the car had passed him, and it seems to be apparent that if the rear door had not been open the entire car would have passed without injuring him. He testified that no alarm signals were given and that he did not know the car was passing until he was struck.

We do not deem it necessary to discuss all of the questions referred to in the briefs of counsel, because the facts in this case are few and simple, and the questions involved have been so frequently discussed by this and other courts as to make further discussion unnecessary.

[1] That the plaintiff was clearly guilty of negligence contributing to his injury is manifest, and it is likewise clear that the jury by their verdict have so found. The rear window of a railroad station located within about four feet of a track upon which railway cars

are frequently passing is clearly an improper place to go for the purpose of taking an infant child through the window, or for any other purpose except in some emergency. Such a window as this certainly was not intended as a means of exit from the building.

There is, however, one assignment of error to which we must direct our attention in justice to the plaintiff. The trial court refused to give an instruction offered by the plaintiff, designated as "b", which reads thus:

"The court instructs the jury that even though they believe from the evidence that the plaintiff was guilty of negligence in going upon the platform and standing at the window of the station of the defendant with his back toward the car and railroad track, yet this will not prevent the plaintiff from recovering in this case if the jury shall further believe from the evidence that the motorman in charge of the defendant's car saw, or by the exercise of ordinary care, foresight and precaution in keeping a lookout ahead, could have seen that the plaintiff was in danger of being struck by the said car or any part thereof, should said car be run by the place around the curve of the track at the point where the plaintiff was so standing and that the motorman could have warned the plaintiff in time for him to remove himself from such danger, or stopped said car by the exercise of ordinary care and caution in time to have prevented the said car or any part thereof from striking the plaintiff, but failed so to do, then the jury should find for the plaintiff."

This, of course, submits to the jury the question of whether the plaintiff's peril should have been discovered, and whether thereafter the defendant had the last clear chance to save him from the consequences of his own negligence.

12

[2–4] That the plaintiff, when he visited the station grounds for the purpose of meeting his brother-in-law, and in moving around with those assembled there in the near-by public road was an invitee, seems to be perfectly well established. *N. & W. Ry. Co.* v. *Parrish,* 119 Va. 672, 89 S. E. 923. As an invitee, however, he should have remained in the place assigned to which the public was invited and where he had a right to be. Having the negligence of the plaintiff in view, the court in its other instructions held the plaintiff to be a mere trespasser. We think this is extending that doctrine too far,—that is, we cannot agree that because one goes to an unsafe place at a station which is but a step from a safe place where he has the right to be, that this negligence relieves the transportation company from every obligation except the obligation not to injure him wilfully. It is the duty of such companies at and about railway stations to which people are invited to come, and where they may be constantly expected, to operate its trains there with reasonable care proportioned to the danger which the circumstances create. Under the circumstances of this case, this imposed upon the company not the duty to provide for the absolute safety of persons who were themselves negligent in going to forbidden places and where they should not have gone, but to move its cars with reasonable care, and this involves exercising a reasonable lookout for persons naturally to be expected to be in that vicinity. *St. Louis & S. F. R. Co.* v. *Jones,* 78 Okla. 204, 190 Pac. 385, 16 A. L. R. 1048. The evidence for the plaintiff tends to show that the car which struck him had been standing still across a public road about thirty-five or forty feet away from the place of the injury; that he went to the front of this car and then

walked away from it to the window of the station, and that there was nothing to obstruct the view of the motorman as the car approached.   Possibly one explanation of the injury is that the motorman was fully occupied looking out for the many other people about there at that time.   The theory of the company is that the peril of the plaintiff was never discovered by the motorman, but that he moved along with the car to the place at which he was injured so that there was no negligence on the part of the motorman in failing to see him, because he was neither in front of the car nor within the line of the motorman's vision.   If this be true there is no liability, and the plaintiff's own negligence is the sole cause of his injury, but if the plaintiff's version is true, then by the exercise of ordinary care the motorman should have seen that the plaintiff had placed himself in a position of extreme danger, and this imposed the further duty of sounding proper alarm signals and doing all in his power to avert the injury.   Notwithstanding the gross negligence of the plaintiff, the evidence thus presents an issue of fact which the plaintiff was entitled to have submitted to the jury, and our conclusion is that the court erred in denying him that right.

[5–6] Every other issue raised in the case has been decided by the jury against the plaintiff under instructions which they could hardly have misunderstood, but this issue has never been submitted.   Our judgment, therefore, is to remand the case for a new trial, without reopening all of the issues, but merely for the purpose of determining whether or not, as a fact, the company, through its motorman, by the exercise of reasonable care and without the neglect of his other duties, should have perceived the peril of the plaintiff and thereafter, by the exercise of reason-

able care, could have averted his injury. The burden of proving this fact is upon the plaintiff, like any other fact which is essential to justify a recovery. If he fails to show to the satisfaction of the jury by a preponderance of the evidence that there was this clear opportunity to save him from the consequences of his own negligence, their verdict should be for the company; otherwise for the plaintiff, and if they should find for the plaintiff, they should assess his damages at such sum as in their opinion, from the evidence, under the circumstances, will afford fair compensation for the injury.

*Reversed.*