## Wytheville.

## Virginia Railway and Power Company v. Mary Powell Burr, Administratrix of Charles Gilbert Burr, Deceased.

### June 17, 1926.

1. Street Railways—*Boarding Car—Narrow Space Between Wall of Station and Car—Obvious Danger—Case at Bar.*—In the instant case plaintiff's decedent was killed while attempting to board a street car of defendant at a station of defendant. When the car was in the station there was a narrow space between one wall of the station and the car on one side, whereas on the other side there was a larger space between the car and the station wall. In this larger space passengers generally board the car, but passengers sometimes board and alight from the cars at the front end of the car on the side where the space is narrow. It is impossible, however, to board the car at its rear platform on this side while the car is standing in the station.

   *Held:* That because of the curve in the track and the necessary swing of the car as it entered the street, the narrow space between the moving car and the wall became obviously dangerous to one then standing there.

2. Street Railways—*Boarding Car—Narrow Space Between Wall of Station and Car—Obvious Danger—Instructions—Case at Bar.*—In the instant case plaintiff's intestate was killed by defendant's street car when he entered a narrow space in the station between a moving car, which he intended to board, and the wall of the station. While the jury should not have been unequivocally directed to find for the defendant, if plaintiff's intestate, having full time to board the car delayed doing so until the car was in motion and then attempted to get on the car, with no assurance of safety in his attempt from defendant's employees, yet in view of the testimony as to the presence of plaintiff's intestate far down in the narrow and dangerous place, defendant was entitled to have the jury instructed upon this point. But the instruction should not have omitted reference to all of the other features of the case, upon which plaintiff relied.

3. Instructions—*Multiplication of Instructions—Jury Should be Informed of Legal Principles.*—While the Supreme Court of Appeals has dis-

couraged the multiplication of instructions, it is certainly true, in view of the sanctity of the verdicts, that juries should be carefully informed by the court as to the legal principles properly applicable.

4. Street Railways—*Boarding Car—Narrow Space Between Wall of Station and Car—Obvious Danger—Instructions—Case at Bar.*—In the instant case plaintiff's intestate was crushed between a car of defendant and the wall of the station when attempting to board the car. The case was a difficult one upon the facts. No sufficient reason was suggested for plaintiff's intestate being so far down in the alleyway between the car and the station as to be unable to save himself. The car was moving very slowly and it was only necessary for plaintiff's intestate to take a few steps to place himself in a position of safety. An instruction was given for the plaintiff as to the very high degree of care due to a passenger; and defendant requested an instruction that it was the duty of plaintiff's intestate to exercise reasonable care for his safety in attempting to board the car and that defendant's employees had the right to assume that he would exercise his senses; that while carriers must exercise the highest degree of care for the protection of passengers, carriers are not required to exercise guardianship over passengers who are adults and mentally competent, or to undertake to coerce them into the exercise of ordinary care.

   *Held:* That this instruction or its equivalent should have been given, and to refuse it was reversible error, because defendant was entitled to have the attention of the jury sharply drawn to its claim that plaintiff's intestate had ample opportunity to save himself and should have done so.

5. Instructions—*Applicability of Instruction in one Case to Another Case.*—While it may not be always advisable to copy the language of the courts as applied to the peculiar facts of one case then under consideration, and to embody such language in an instruction in another and a different case, it may properly be done if the principle involved is applicable.

6. Street Railways—*Narrow Space Between Wall of Station and Car—Last Clear Chance—Instructions—Case at Bar.*—In the instant case plaintiff's intestate was crushed and killed by a car of defendant in a narrow and obviously dangerous space between the moving car and the wall of the station.

   *Held:* That defendant was entitled to an instruction telling the jury, in substance, that if the decedent, having found himself in a dangerous place, had the last clear chance to avoid the danger and failed to do so, his administratrix could not recover.

7. Street Railways—*Narrow Space Between Wall of Station and Car—Last Clear Chance—Instructions—Case at Bar.*—In the instant case plaintiff's intestate was crushed by defendant's car in a narrow space between the car and the wall of the station while attempting to

board the car. Defendant asked for an instruction that notwithstanding its negligence, if "the plaintiff's intestate, by the exercise of ordinary care, could have discovered such negligence in time to have avoided the consequences thereof, but that he failed to do so, then such failure was itself negligence and the plaintiff cannot recover in this action."

*Held:* That while this instruction was not as well drawn as it should have been, it directed attention to a sound rule and should have been either given or amended to express the proper rule.

8. STREET RAILWAYS—*Narrow Space Between Wall of Station and Car—Last Clear Chance—Case at Bar.*—Plaintiff's intestate was killed by a car of defendant which he was attempting to board and which crushed him in the narrow space between the car and the station wall when it started. If there was negligence, either primary or secondary, on the part of the defendant company which would otherwise support a recovery, nevertheless, if previous to the accident and after the discovery of his own peril, the decedent, by the exercise of ordinary care, could then have avoided his own injury, then there could be no recovery.

9. INSTRUCTIONS—*Particular Facts of the Case—Death by Wrongful Act—Reasonable Care by Decedent—Case at Bar.*—Instructions should be drawn so as to apply to the distinctive facts of the particular case being tried. In a case which is very close upon the facts, the instructions should be most carefully drawn, and in an instruction for death by wrongful act the failure to direct the attention of the jury to the claim of defendant, based upon evidence tending to show that deceased might have escaped injury if he had exercised reasonable care for his own safety, is reversible error.

10. EXPERT AND OPINION EVIDENCE—*Opinion of Non-Expert—Collective Facts Rule—Case at Bar.*—In the instant case plaintiff's intestate, in attempting to board a car, went into a narrow and obviously dangerous place between the car and the station wall and was killed as the car swung around the curve into the street. An eye witness testified that as the car moved he heard a rush at the door, looked out to see what the trouble was and saw plaintiff's intestate fall back, "and it seems as though then he would have had time to run out—." This testimony was objected to by plaintiff and excluded.

*Held:* That this evidence should have been admitted under what is called the collective facts rule and not excluded under the opinion rule.

11. EVIDENCE—*Admission or Exclusion—Discretion of Trial Court.*—Much is left to the discretion of the trial court upon the admissibility of evidence.

12. EXPERT AND OPINION EVIDENCE—*Opinion Evidence—Collective Facts Rule.*—Impressions which are based upon a great variety of circum-

stances and a combination of appearances, which, because either of the witness' infirmity or the infirmity of our language cannot be adequately or better expressed, may be testified to by those who have personally observed the facts. If their inferences drawn from their observation of the facts are such as to justify confidence, and the facts and proper inferences therefrom are so blended as to make separation difficult, they may generally state their conclusions.

13. EXPERT AND OPINION EVIDENCE—*Opinion Evidence—Admissibility.*—A mere opinion (surmise) based upon insufficient knowledge, experience or observation is inadmissible, while such a conclusion intelligently drawn from facts observed by the witness is generally admissible. Its admissibility and its value, however, depend upon the pertinence and significance of those observed facts which should be related by the witness.

Error to a judgment of the Hustings Court of the city of Petersburg, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed and remanded.*

The opinion states the case.

*T. Justin Moore, N. L. Flippen* and *R. H. Mann,* for the plaintiff in error.

*Bramhall & McCabe, Bernard C. Syme, John R. Saunders, Attorney-General, Leon M. Bazile* and *Lewis H. Machen, Assistant Attorney-Generals,* for the defendant in error.

PRENTIS, P., delivered the opinion of the court.

A judgment in favor of the defendant in error (plaintiff) against the Virginia Railway and Power Company, to which a writ of error has been allowed, is here under review.

This is a general summary of the outstanding facts which the record discloses:

Charles Gilbert Burr was killed under these circumstances: The company operates an interurban street car line between the cities of Petersburg and Richmond. The Petersburg terminal of the railway fronts on Sycamore street in Petersburg, and its interurban cars there run into a small building where it discharges and receives passengers. This station is 21 feet 8 inches wide inside and the car track is 4 feet 8¾ inches in width. The car by which Burr was killed as it emerged from this station was 8 feet 9 inches wide, which caused it to extend outside of the rails approximately a distance of two feet. The southernmost rail of the track is five feet from the southern wall of the station, thus leaving a narrow space between the southern wall and the side of the car a little less than three feet wide. Into this narrow space the overhanging of a car swings as it rounds a curve when it leaves the station and enters Sycamore street. At the rear end of this station adjoining its southern wall, there is a freight platform, elevated above the floor of the building, which platform, when a car is in the terminal, is so close to the southern side of the car that the rear door on that side cannot be entered by passengers. On the north side there is a space between the northern wall of the building and the northern side of the car when standing there for the receipt of passengers of approximately ten feet, and it is the northern side of the car and this space which is generally used by passengers in boarding and alighting from cars in this terminal building. It is likewise true that when a car is standing in the station passengers are also in the habit of boarding and alighting at the front end of the car on the southern side, but it is impossible, as has been stated, for a passenger to board a car at its rear platform on the southern side while the car is standing in the terminal building. The

station is well lighted. There are two openings or windows in the southern wall which does not extend to the west end of the station, but there is a space of 8 feet 9 inches from that end of the wall to an iron pillar which supports the building at its west or Sycamore street end.

Burr, the decedent, had purchased a ticket to Richmond at the station in Petersburg, intending to take a car scheduled to leave the terminal at 8:35 p. m. He went there with his friend, Mr. F. S. Farrow, but instead of boarding the car immediately upon the purchase of his ticket, he stood conversing with Farrow in front of the car on the north side of it—that is, the side which most of the passengers usually entered when boarding the cars. Realizing that it was about time for him to get on the car, and that it was about to start, he crossed in front of it from the north to the south side of it, and turned, apparently intending to enter the front door on the south side. Farrow testifies that just after they parted he took five or six steps when he heard the car start. The motorman says that when the time for the car to leave arrived, he entered the front platform on the south side, closed the door and prepared to start, then tapped his bell as a signal, received a responsive signal from the conductor, and started slowly out of the station in the usual way. It seems evident, then, that Burr found the south door of the front end of the car already closed when he thus sought to board it. The catastrophe occurred shortly after the car started to move and it is impossible to know precisely the sequence of his subsequent movements. The contention for the plaintiff is that while he was at an appropriate place for boarding the car at the front end, the swinging of the car mashed him against the south wall of the station; that the place was itself

dangerous; and that the agents of the company should, in the exercise of the high degree of care required of them, have warned him or stopped the car so as to save his life. The contention of the defendant is that Burr, finding that he could not enter the front door, went down into the narrow space between the car and the southern wall and attempted to board the moving car at the rear door on the southern side. It seems to be reasonably clear that the car had moved slowly about twenty-five feet before the tragedy occurred. Burr was seen in the narrow space from one of the windows on the south side of the car by one of the passengers, and by another passenger who was standing on the rear platform was seen knocking at the rear door a few seconds before he was struck and fell. The motorman testifies that when he boarded the car there was no one in the narrow space on the south side; that after he closed the door and took his seat on the right hand side of the front platform he could not see into this space; and that his duties while moving the car out of the station into the street required all of his attention. The conductor testified that the car was crowded, and that his attention was entirely occupied with seeing that passengers boarding the car on the north side at the rear entrance were safe.

[1] Because of the curve in the track and the necessary swing of a car as it entered the street, the narrow space between a moving car and the wall became obviously dangerous to one then standing there. *Meanley* v. *P. H.*, &c., *Ry.*, 133 Va. 175, 112 S. E. 800.

A number of errors are assigned. Among them that instruction No. 1, offered by the defendant, was refused by the court. It refers to the contention of the defendant that the plaintiff attempted to board the car while it was in motion, and reads thus:

[2] "If the jury believe from the evidence that the plaintiff's intestate had full time to get on the defendant's car, but delayed boarding the same; that the car proceeded to leave the station at its schedule time; that when the plaintiff's intestate attempted to get on the car it was in motion and that the defendant's employees had given him no assurance of safety in his attempt to board the said car, and that in so attempting to board the same he was injured and killed, then the court tells the jury that the defendant is not liable to the plaintiff and they must find for the defendant."

In view of the testimony as to the presence of Burr so far down in the narrow and dangerous place, it seems perfectly clear that the defendant was entitled to have the jury instructed upon this point. This instruction was, however, erroneous in this case. The jury should not, under the circumstances supposed, have been unequivocally directed to find for the defendant. As it contained this direction, it should not have omitted reference to all of the other features of the case, upon which plaintiff replied.

Another error assigned is that the court refused to grant instruction No. 2 which was requested for the defendant.

This reads: "It was the duty of the plaintiff's intestate in attempting to board the defendant's car to exercise reasonable care for his own safety and the defendant's employees had the right to assume that he would exercise his senses. While passengers are entitled to expect and demand from carriers the highest degree of care for their protection and safety, this rule does not go to the extent of requiring carriers to exercise guardianship over passengers who are adults and mentally competent, or to undertake to coerce them into the exercise of ordinary care for their own safety. Neither are carriers insurers of passengers."

[3] While this court has discouraged the multiplication of instructions, it is certainly true, in view of the sanctity of the verdicts, that juries should be carefully informed by the court as to the legal principles properly applicable. It is difficult to account for this tragic accident. It must be remembered that no sufficient reason has been suggested as to Burr's being so far down in the alleyway as to be unable to save himself. The south wall against which he was crushed did not extend to the front of the building, and if the south front door of the car was at the point of the greatest danger, that is, just east of the front end of the wall, then it was only necessary to take a few steps towards Sycamore street and into the open space to reach a position of safety. It must in this connection also be remembered that the car was moving very slowly, and that it traveled twenty-five feet before the catastrophe.

[4, 5] It seems to us, then, under the conceded facts of this case, especially in view of the instruction given for the plaintiff as to the very high degree of care due to a passenger, that this instruction (2) or its equivalent should have been given. Its language is taken from *Davidson* v. *Washington and Old Dominion Railway*, 129 Va. 107, 105 S. E. 669, in which a demurrer to the plaintiff's evidence was properly sustained. While the facts of that case differ from this and instructions should always be addressed to the evidence of the particular case, the principle enforced there, as urged for the defendant company here, is clearly applicable. While it may not be always advisable to copy the language of the courts as applied to the peculiar facts of one case then under consideration, and to embody such language in an instruction in another and a different case, it may properly be done if the principle involved is applicable. We think this instruction also,

or its equivalent, should have been given, for the defendant company was entitled to have the attention of the jury sharply drawn to its claim that the plaintiff had ample opportunity to save himself and should have done so. Refusal to give it constitutes reversible error in this case.

[6, 7] In the humane spirit which has originated and developed the doctrine of discovered peril or last clear chance, the courts have gone far in sustaining recoveries in favor of plaintiffs whose negligence is conceded. In this case the defendant company asked for instruction No. 12, telling the jury, in substance, that if the decedent, having found himself in a dangerous place, had the last clear chance to avoid the danger and failed to do so, he could not recover. This is the instruction offered:

"The court instructs the jury that if they believe from the evidence that the defendant was negligent and that the plaintiff's intestate, by the exercise of ordinary care, could have discovered such negligence in time to have avoided the consequences thereof, but that he failed to do so, then such failure was itself negligence and the plaintiff cannot recover in this action."

[8, 9] While we do not think that the instruction is as well drawn as it should have been, it directs attention to a sound rule and it should have been either given or amended to express this proper rule, namely that even if the jury believed that there was negligence, either primary or secondary, on the part of the defendant company which would otherwise support a recovery, nevertheless, if previous to the accident and after the discovery of his own peril, the decedent, by the exercise of ordinary care, could then have avoided his own injury, then he could not recover. *McNamara* v.

*Rainey Corp.*, 139 Va. 210, 123 S. E. 515. As has been so often stated, instructions should be drawn so as to apply to the distinctive facts of the particular case being tried. This tragic accident presents peculiar features, is very close upon the facts, and the instructions should be directed to these features. It is a case, therefore, in which the instructions should have been most carefully drawn, and the failure to direct the attention of the jury to the claim of the company, based upon the evidence tending to show that the deceased might have escaped injury if he had exercised reasonable care for his own safety, is also reversible error.

We shall not refer to all of the errors assigned, because the general principles governing cases like this are sufficiently settled by previous cases to dispense with unnecessary repetition in every subsequent case which is presented.

There is, however, another exception which should be adverted to. It refers to the exclusion of part of the testimony of the witness Andrews. It can be best understood by quoting the evidence referred to.

"Mr. Mann (defendant's counsel): Can you tell us what occurred in regard to what you know about this injury?

"A. As I said, I just stepped on the car, and the car had started to move off, probably moved twenty or twenty-five feet, when I heard a rush at the door like some one would rush at the door and slap their hand in the center of it. Naturally I stepped over to look to see what the trouble was, and I saw this man fall back, and it seems as though then he would have had time to run out—

"Mr. Bramhall (plaintiff's counsel): I object to a conclusion.

"Witness: I said it was an impression to me—

"Mr. Bramhall: I don't think he can give his impression. He can tell what occurred and the jury can form an opinion and impression. It is objected to as incompetent and immaterial.

"The Court: Do you insist upon that, Mr. Mann?

"Mr. Mann: Yes, sir; I insist upon it.

"The Court: I think that is proper.

"Mr. Syme: We except.

"Mr. Mann: Let him finish his answer. If they want to move to exclude it they can.

"(Answer of witness read.)

"Mr. Bramhall: I move that that last part be stricken out.

"The Court: That is not proper.

"Mr. Mann: Does your honor sustain the motion to strike out?

"The Court: That impression.

"Mr. Mann: We except."

The exception then recites "that part of the foregoing answer to the said question which related to the impression of the witness was stricken out and disallowed by the court, as hereinbefore set out."

[10, 11] Questions like this have been frequently considered by the courts and sometimes efforts have been made to reconcile the decisions. Of course, much must be left to the discretion of the trial court, and we do not wish to impinge upon that rule, but we are of opinion that this evidence was improperly excluded, that it should have been admitted under what is called the collective facts rule and not excluded under the opinion rule. There are several Virginia cases.

In *Combs* v. *Commonwealth*, 95 Va. 88, 27 S. E. 817, the question was as to the identity of corn found at the house where the accused lived—as to whether it was corn which had been recently stolen. The witness

undertook to identify the corn, and in answer to a question said: "That in my opinion to the best of my knowledge and belief." He was then asked: "On what facts do you found your belief and knowledge?" and he answered: "Because we found wheat and shavings in the corn that identified themselves—it was Fultz wheat and poplar shavings in the corn at the mill." And his opinion was held admissible.

In *New York, &c., R. Co.* v. *Wilson's Admr.*, 109 Va. 754, 64 S. E. 1060, one of the questions raised was how far a signal given by a red lantern could be seen while a dense fog prevailed, and it was held that a non-expert witness who was present and acquainted with the existing conditions might give his opinion as to how far under those conditions on that occasion the signal given by a red lantern could have been observed, that this was not a matter requiring expert knowledge, but of common experience, and that its weight could be determined by the jury who had the witness before them and could judge the value of his opinion.

In *C. & O. Ry. Co.* v. *Arrington*, 126 Va. 201, 101 S. E. 415, the question raised was whether the evidence of the plaintiff, to the effect that it was necessary for him to go in between the engine and the car in order to couple it, was admissible. It was there claimed that this was an opinion expressed by the witness upon a pivotal question which was to be decided by the jury and was, therefore, illegal and incompetent. This court, however, held the evidence was admissible, cited a number of cases in the discussion and gave the reasons for the rule.

In *Mohler* v. *Commonwealth*, 132 Va. 727, 111 S. E. 454, the question was whether a witness could testify that an object lying in a cabin covered by an overcoat, or fertilizer bags, or something else, looked to him

very much like a man. The object of this testimony was to show that the body of a murdered man had been left in the cabin. The witness was asked whether it might not have been just a pile of rags or something, to which he answered: "I cannot think it. I think it was a man's body instead of a pile of rags." In holding that the testimony was not the mere opinion of a witness to be excluded under the opinion evidence rule, this court said: "It is there held that answers of this character, which relate to a matter not requiring expert knowledge, are admissible. Such statements are not mere opinions, but impressions drawn from observed facts, sometimes called the 'collective facts rule.' "

This rule is nowhere better stated than in *Commonwealth* v. *Sturtivant*, 117 Mass. 133, 19 Am. Rep. 401, thus: "The exception to the general rule that witnesses cannot give opinions, is not confined to the evidence of experts testifying on subjects requiring special knowledge, skill or learning, but includes the evidence of common observers, testifying to the results of their observation made at the time in regard to common appearances of facts, and a condition of things which cannot be reproduced and made palpable to a jury. Such evidence has been said to be competent from necessity on the same ground as the testimony of experts, as the only method of proving certain facts essential to the proper administration of justice. Nor is it a mere opinion which is thus given by a witness, but a conclusion of fact to which his judgment, observation, and common knowledge has led him in regard to a subject matter which requires no special learning or experiment, but which is within the knowledge of men in general."

[12] Impressions which are based upon a great

variety of circumstances and a combination of appearances, which because either of the witness' infirmity or the infirmity of our language cannot be adequately or better expressed, may be testified to by those who have personally observed the facts. If their inferences drawn from their observation of the facts are such as to justify confidence, and the facts and proper inferences therefrom are so blended as to make separation difficult, they may generally state their conclusions. 11 R. C. L., pp. 568 and 594, secs. 5 and 21; 22 C. J., pp. 530-531, secs. 612-613.*

In *First National Bank of Hays City* v. *Robinson*, 93 Kan. 464, 144 Pac. 1019, Ann. Cas. 1916D, 286, attention is called to the better practical and modern notion of the admissibility of evidence, which is that it is more important to ascertain the truth than to quibble over impractical and subtle distinctions.

Mr. Wigmore (1 Wigmore on Evidence, 2nd ed., sec. 658) uses this language: "The second corollary of the general principle of knowledge is that the result of the witness' observation need not be positive or absolute knowledge. Such a degree of certainty cannot be demanded, even in theory; it suffices if he had an opportunity of personal observation, and did get some impressions from this observation." He notes that if there was actual personal observation of the pertinent facts, he may testify as to the impression which he then gained from his personal observation. Having shown the admissibility of such testimony, generally, in the course of an elaborate philosophical and lengthy discussion of this difficult question in all of its aspects, he thus states the fundamental limit of the rule:

*The statement found in *Mohler* v. *Commonwealth*, 132 Va. 728, that the quotation there shown is taken from 9 R. C. L. 191, is erroneous. The precise language there quoted is found in *State* v. *Baldwin*, 36 Kan. 10, 12 Pac. 318.

"What the courts repudiate then is a mere guess, an exercise of the imagination, a suspicion, a conjecture, offered in the place of the result of actual personal observation; it is from this point of view only that a belief or opinion or impression is not to be received."

[13] So, then, a mere opinion (surmise) based upon insufficient knowledge, experience or observation is inadmissible, while such a conclusion intelligently drawn from facts observed by the witness is generally admissible. Its admissibility and its value, however, depend upon the pertinence and significance of those observed facts which should be related by the witness.

In 4 Wigmore on Evidence (2d ed.), sec. 1929, he recasts and restates his view of the future of the opinion rule, which is quoted by this court in *C. & O. Ry. Co.* v. *Arrington, supra,* and suggests the form of a statute which would clarify the matter; and we repeat what we there said, that the enactment of such a statute is well worthy of the attention of the General Assembly.

Tested by these precedents, we are clear in our view that the court erred in excluding this testimony. The witness was subject to cross-examination, and the reasons for his impression, if they had not already been fully disclosed by him, and could have been elicited by cross-examination. He was an eye-witness, standing on the rear platform of the car, saw the deceased, observed his movements, knew the speed of the car, and was in a position to aid the jury by giving them his impressions from these facts so personally observed by him, and while not binding upon the jury, his impressions from these collected facts were well worthy of their careful consideration.

It must be borne in mind that no just conclusion upon the facts of this case can be reached without a fair and careful consideration of the suddenness of this

unexpected catastrophe. If either the deceased or the agents of the company had foreseen the peril, certainly we may assume that the tragedy would have been avoided. In order to determine this question justly then, no evidence which is admissible and likely to aid the jury which can possibly be adduced should be excluded.

While the briefs take a wide range, we think it unnecessary to pursue the subject further. The judgment will be reversed and the case remanded for a new trial.

*Reversed and remanded.*