# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

JOLIFF S. BRINKLEY V. PENNSYLVANIA RAILROAD COMPANY

and

NORFOLK AND PORTSMOUTH BELT LINE RAILROAD COMPANY
V. JOLIFF S. BRINKLEY AND PENNSYLVANIA
RAILROAD COMPANY.

March 12, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and
Eggleston, JJ.

The opinion states the case.

*Venable, Miller, Pilcher & Parsons,* for the plaintiff in error, Joliff S. Brinkley.

*Stewart K. Powell* and *Harry A. Brinkley,* for the defendant in error, Pennsylvania Railroad Company.

*James G. Martin & Son* and *R. B. Spindle, Jr.,* for the plaintiff in error, Norfolk and Portsmouth Belt Line Railroad Company.

*Stewart K. Powell, Venable, Miller, Pilcher & Parsons,* and *Harry A. Brinkley,* for the defendants in error, Joliff S. Brinkley and Pennsylvania Railroad Company.

GREGORY, J,, delivered the opinion of the court.

Joliff S. Brinkley, while employed as a conductor for the Norfolk and Portsmouth Belt Line Railroad Company and in the act of coupling cars in the yard of the Pennsylvania Railroad Company, at Port Norfolk, received a permanent and serious injury to his left hand. He instituted an action for damages by declaration against both railroad companies charging that he was an employee of both companies and that they were liable to him both at common-law and by virtue of the Federal Employers' Liability Act (45 U. S. C. A., sections 51-59). The parties stipulated that the case should be tried and governed by the provisions and terms of said act "with the understanding that the defenses of the respective defendants are not impaired by that stipulation—the act governs the case."

Both railroads were engaged in interstate commerce and Brinkley was collecting cars which moved in interstate commerce at the time of his injury. The case was

tried under the act and when the evidence was concluded and without the Pennsylvania Railroad Company having introduced any evidence, it moved the court to strike the evidence as to it. The court sustained this motion and struck the evidence as to that company and this action finally resulted in a judgment dismissing that company from the case. A writ of error was granted to that judgment to both Brinkley and the Norfolk and Portsmouth Belt Line Railroad Company.

After the Pennsylvania Railroad had been dismissed, the case proceeded against the remaining defendant, Norfolk and Portsmouth Belt Line Railroad Company and resulted in a verdict in favor of Brinkley against that company of $20,000. The Norfolk and Portsmouth Belt Line Railroad Company moved to set aside the verdict on the ground that it was excessive and the court sustained the motion, set aside the verdict and awarded a new trial limited to the question of damages alone. Upon this last trial the jury again rendered a verdict for $20,000 against the Norfolk and Portsmouth Belt Line Railroad which the court refused to set aside and upon which it pronounced judgment.

For brevity the Pennsylvania Railroad Company will be referred to as the Pennsylvania Railroad and the Norfolk and Portsmouth Belt Line Railroad as the Belt Line.

Both Brinkley and the Belt Line assign error to the judgment dismissing the Pennsylvania Railroad from the case. Brinkley is contending that both railroad companies are liable to him for his injury while each railroad company is seeking to place the responsibility upon the other. The Belt Line contends that the Pennsylvania Railroad is either solely responsible or certainly jointly responsible for Brinkley's injury. The Pennsylvania Railroad contends that Brinkley was not its employee and therefore under the Federal Employers' Liability Act it is not liable.

Brinkley was a freight conductor employed by the Belt Line. He had been so employed for many years. The

Pennsylvania Railroad had a freight yard at Port Norfolk in charge of one W. C. Duffy. Up until 1929 the Pennsylvania Railroad operated its own engines in this yard for the purpose of hauling and shifting cars. After 1929 it arranged to discontinue the use of its own engines and agreed with the Belt Line for the latter to perform this work with its own engines and crew. Under this arrangement whenever the Pennsylvania Railroad notified the Belt Line to do so, it would send its engine and crew over to the yard of the Pennsylvania Railroad to haul, shift and move cars and to pull them out of the yard. The foreman in charge of the yard would give directions to the conductor as to which cars should be moved. The Belt Line charged the Pennsylvania Railroad by the hour for the use of the engine and crew.

On May 11, 1933, Brinkley went with the engine and crew into the yard of the Pennsylvania Railroad and was attempting to couple cars that were already on the tracks in the yard. He was acting under the direction of a switching list prepared and given him by Duffy, the yard foreman. The couplers on both of the cars were defective and would not couple by impact. Brinkley attempted to couple the cars by hand and in doing so his hand was caught and severely injured. ·

The assignment of error in the petition of both Brinkley and the Belt Line is directed to the judgment of the court in dismissing the Pennsylvania Railroad from the case. Brinkley contends that the evidence was sufficient to carry the question of the Pennsylvania Railroad's liability to the jury and that it was jointly liable with the Belt Line. He charged in his declaration and contends in his petition that he was an employee of both railroads.

The pertinent provisions of the act are found in sections 2, 7, 51, 53, 54 and 55, Title 45, of the United States Code Annotated.

Section 2 provides that it shall be unlawful for any common carrier engaged in interstate commerce to haul or permit to be hauled on its line any car moving in inter-

state traffic not equipped with couplers coupling automatically by impact and which can be uncoupled without the necessity of men going between the ends of cars.

It has been shown, that this section was violated and that the cars that Brinkley was attempting to couple when he received his injury were not equipped with the required coupling. Failure to have the cars equipped with automatic couplers contributed to the injury of Brinkley.

Section 7 provides that any employee of such carrier who may be injured by any locomotive, car or train in use contrary to the provisions of the chapter shall not be deemed to have assumed the risk although he continues in the employment after he has knowledge of the unlawful use of such car, etc.

Section 51 provides that every common carrier engaged in interstate commerce shall be liable in damages to any person "while he is employed" by such carrier in such commerce for any injury resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, etc.

Section 53 excuses the contributory negligence of an injured employee "where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury * * * of such employee."

Section 54 provides that the employee of such carrier does not assume the risk of his employment in any case where the carrier has violated any statute enacted for the safety of employees and such violation contributed to the injury.

Section 55 provides that any contract, rule, regulation or device, the purpose of which shall be to enable such carrier to exempt itself from any liability created by this chapter, shall to that extent be void.

The jury by its verdict has found that Brinkley was an employee of the Belt Line. There is evidence to support that finding and the trial court has sustained it by its

judgment. In the consideration of the case under well established principles we are bound by that finding.

The next question which arises is whether there was sufficient evidence to submit to the jury the issue of whether or not Brinkley was also an employee of the Pennsylvania Railroad. If he was then that company would be liable also.

■ It is unnecessary to restate the familiar rule regarding the effect of a motion to strike the evidence. In analyzing the evidence in the light of the motion to strike of the Pennsylvania Railroad it will be considered in a favorable manner to Brinkley, the plaintiff, and if after due consideration a fair or substantial doubt exists as to whether or not the motion should have been sustained that doubt will be resolved in favor of Brinkley. If there was evidence tending to show that Brinkley, at the time of the injury was a servant of the Pennsylvania Railroad, the trial court should have overruled the motion to strike the evidence and it should have submitted the question to the jury.

The Pennsylvania Railroad introduced no evidence. Brinkley, Williamson, the superintendent of the Belt Line, and Duffy, the foreman in charge of the Pennsylvania Railroad yard, testified regarding the relation of Brinkley to the Pennsylvania Railroad.

On May, 11, 1933, Brinkley reported to the Belt Line for duty. He was ordered to go to the yard of the Pennsylvania Railroad, at Port Norfolk, to collect cars of perishable freight. He proceeded with an engine, an engineer, fireman and two brakemen. When he arrived at the yard he reported to Duffy who had charge of the yard. Brinkley testified that after he reported to Duffy he was furnished by Duffy with a list of cars that were loaded and ready to go out that afternoon to various destinations. He testified that "I proceeded to switch out the loaded cars, out of the different tracks, that were ready. Some of the tracks were not ready at the time I arrived, and if I am not mistaken, Mr. Duffy wanted me to wait at the bottom

of No. 11 because they had not finished." The cars were ordered moved in accordance with the direction of Duffy, through the switching list.

The bills of lading for the cars were made by Duffy for the Pennsylvania Railroad. Brinkley kept a record of the time spent by the engine and crew in the yard of the Pennsylvania Railroad and delivered it to the Belt Line. He, and the crew were paid their wages by the Belt Line.

Williamson testified that he was superintendent of the Belt Line and that the Belt Line sent the engine and crew over to the yard of the Pennsylvania Railroad on the day that Brinkley was injured. He testified as to the arrangement between his company and the Pennsylvania Railroad. Under this arrangement which began in 1929, the Pennsylvania Railroad discontinued the use of its own engine in its yard and engaged the Belt Line to perform all services in the yard in which an engine and train crew were needed. For this service the Belt Line was paid at the rate of $12.50 per hour and in addition certain connecting switching charges which are here unimportant. These charges had been approved by the Interstate Commerce Commission. This witness further testified that the Belt Line had no control over the work done in the yard of the Pennsylvania Railroad; that the orders for the work to be done there were given by a representative of the Pennsylvania Railroad who was stationed there for that purpose and that the Belt Line did not receive the cars until the crew brought them to its own yard. He also testified that the Pennsylvania Railroad accepted the services which were performed by the engine and crew on the day of the injury and enjoyed the benefit thereof.

Duffy was called as an adverse witness by the Belt Line. He testified that he was a foreman and in charge of the yard of the Pennsylvania Railroad where the injury occurred; that he supervised the loading and unloading of cars; that he issues the bills of lading for the cars; that he issues orders for the movement of all the cars on the yard; that he gave Brinkley a switching list of cars on

the day of his injury; that Brinkley had no authority to move any cars except through his (Duffy's) order; that he gave Brinkley the order to move the cars which he was attempting to couple when he received his injury and that he (Duffy) was responsible for the movement of all cars on the yard, where they should be located and where and when they should go.

As heretofore stated, if Brinkley was employed by the Pennsylvania Railroad when he was injured that company would be liable as well as the Belt Line. It was charged with the absolute non-assignable duty to equip and maintain automatic couplers on all cars it hauled or permitted to be hauled or used on its line moving in interstate traffic. The evidence tends to show that the particular cars which were not so equipped were in its yard and being hauled under the direction of Duffy, its agent; that the failure to have these cars properly equipped with automatic couplers contributed to Brinkley's injury and that they were being moved in interstate traffic. Whether Brinkley was employed by the Pennsylvania Railroad at the time and under the circumstances was a mixed question of law and fact which we think should have been submitted to the jury for its determination under instructions based on the principles announced in the cases of *Atlantic Coast Line R. Co.* v. *Tredway's Adm'x,* 120 Va. 735, 93 S. E. 560, 10 A. L. R. 1411 (certiorari denied 245 U. S. 670, 38 S. Ct. 191, 62 L. Ed. 540), and *Linstead* v. *C. & O. Ry.,* 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453.

Under a liberal construction of the act which is authorized by the cases that have been decided by the Supreme Court, and giving due consideration to the principles established in the two cases above cited, if the evidence upon another trial warrants it, a finding that Brinkley was employed by the Pennsylvania Railroad as well as by the Belt Line when he was injured could be sustained. In order to establish whether or not Brinkley was such an employee a new trial will be awarded.

The Belt Line assigns error to the granting of instruc-

tions offered by Brinkley. It also complains because the court refused to grant its instructions 1, 2 and 3.

Instruction A granted at the request of Brinkley would, of course, be inapplicable upon a new trial against the Pennsylvania Railroad because it failed to embrace any fact or principle upon which that company could be liable. The reason for the failure to predicate a finding against the Pennsylvania Railroad was because it had already been dismissed from the case when the instructions were given. Instruction B likewise will not be applicable upon another trial for the same reason. It is not necessary to consider the objection to instruction C because, manifestly, it will not be given upon another trial with the objectionable matter in it.

Instruction 1 was properly refused because the fact that the Belt Line engine and crew were in the yards of the Pennsylvania Railroad at the time would not necessarily exempt the Belt Line from liability. This instruction was also objectionable because it predicated liability upon whether or not some of the employees of the Belt Line were negligent, when under the act no negligence need be shown. *Atlantic City R. Co.* v. *Parker,* 242 U. S. 56, 37 S. Ct. 69, 61 L. Ed. 150.

Instruction 2 failed to embrace any theory that Brinkley might have been in the employ of both railroads. He might have been in the general employ of the Belt Line and at the time of the injury the relation of master and servant might have existed between the Pennsylvania Railroad and Brinkley. *Atlantic Coast Line R. Co.* v. *Tredway's Adm'x, supra.*

Instruction 3 should have been refused because there was no evidence that the Belt Line lent its engine and crew to the Pennsylvania Railroad.

The Belt Line complains of the amount of damages allowed by the jury. The trial court thought the damages were excessive upon the first trial and set the verdict aside for that reason but when the second jury returned a verdict for the same amount upon the second trial the

court refused to disturb it. A great deal has been written upon the power of a court to set aside a verdict in a personal injury action because it is excessive. We can add little to what has already been said in our opinions.

■ Brinkley suffered a very serious and permanent injury to his left hand and no doubt he will not be able to follow his calling as a conductor. Let us assume that the disability to his hand is total, would $20,000 be too great an amount to allow for such loss? We think it would be excessive under the principles of *C. & O. Ry. Co.* v. *Arrington,* 126 Va. 194, 101 S. E. 415. There, this court held the verdict excessive. The principles in that case control here and compel us to reverse the judgment and set aside the verdict in favor of Brinkley against the Belt Line because excessive, and award the Belt Line a new trial limited to the question of damages alone. The judgment rendered in favor of the Pennsylvania Railroad which in effect dismissed it from the case is reversed and a new trial is awarded to determine whether the Pennsylvania Railroad is jointly liable for Brinkley's injuries.

> *Reversed, and a new trial awarded against the Pennsylvania Railroad upon all issues.*
> *Reversed, and a new trial awarded the Belt Line, to be limited to the question of damages alone.*